The next case on the calendar is Gentleman v. State University of New York. Okay, we'll hear from the appellant, Mr. Wade. I see you reserved three minutes for I'm sorry, may it please the court. My name is Loxley Wade and I represent the appellant in this matter, Dr. Molly Gentleman. As the court may know, in Nofsky, a case that was decided in 2019, this court invited the appellant, or rather invited litigants to consider whether or not the Catspaw Theory of Liability would be applied to the Rehabilitation Act. But before I get to that, let me just tell you a little bit about Dr. Gentleman. Dr. Gentleman is a woman who has been diagnosed with a bipolar disorder since the age of 21. Despite that disorder, she's achieved great success. She holds 16th United States patent to her name. She's received grants from DARPA, the agency that is responsible for what we call the internet today. Can I ask, Counselor, how that helps you? Don't you need to prove that the disability limited her in a way that wasn't accounted for? Well, with the Rehabilitation Act, they asked for an expansion of what is a disability. The fact is that bipolar disorder, which we stated in our opposition papers, is a mental disorder. It can cause cognitive impairment, the inability to appreciate, or rather, the inability to act as how we would consider normal. I'm extraordinarily sympathetic to that. What I'm interested in is whether or not there was an appropriate showing that it limited her in a way that brought us here. I'll let you answer that question. Are you saying that it's her bipolar disorder that caused her to be so disruptive and hostile to her students? I'm having a hard time seeing how the two are connected. Well, the fact of the case, we don't believe that she was hostile. She was not hostile to her students. Instead, she was perceived as being disabled. And instead, what happened is we had a colleague who brought up information saying that she was disruptive. The students, they got multiple, multiple complaints from students about verbal abuse, bullying, public shaming. They had a meeting where they took notes from all these students. I read the notes, and then two weeks later, they said they're not going to renew her. So it was the students and the evaluations as well, multiple, multiple students. So whether she was regarded as disabled or not, the students said that she was a terrible teacher. So why isn't that? I know the district court didn't decide it on that ground, but how can you show a rational jury conclude based upon that uncontroverted evidence? These are third parties that are making complaints that that was the reason. Two weeks after that meeting, they said we're not renewing your contract. What am I missing on that? She was discharged for a claim of workplace violence. It was not the students, and she was not a party to those complaints. She did not have the opportunity to address those complaints. So that's why, I mean, so that gets back to my question. Like, I can imagine a scenario in which someone said because of her bipolar disorder, she needed an accommodation, which meant that her colleagues and her students needed to understand that she was not going to engage with people in a particular way. But my understanding is that was never alleged, raised, asked for. And so we're stuck with hostile behavior and then a claim of a disability, and I'm not seeing a marrying of them. So can you help me? Well, the accommodation that she needed would have been from her colleagues to be able to, for them to understand how she operates. As a matter of fact- But not from her students. No. As a matter of fact, she used the Socratic method, and she caught students cheating. Well, I used the Socratic method. I mean, she- They're not related. Okay. Can I ask something else? In order to rule for you, are we going to have to decide that if you list one of the medical diagnoses that have been enumerated, do you have a per se condition that there doesn't need to be an individualized assessment? No, I would not make that argument. Instead, what I would make the argument is when we look at the facts about what the other parties to the case had alleged about Dr. Gentleman, they sworn statements about how she was terrible, how she was erratic, mood swings. That can convince a supervisor that perhaps there is something disturbing about this individual. So what we're asking that the jury should decide this. It is not a per se disability that she has a bipolar disorder. As a matter of fact, she has overcome her disability. No, that's not my point. So where is the individualized assessment in your argument? You don't dispute that, at least right now under current law, an individual assessment needs to be made even if somebody has one of those enumerations. Is that right? You're not asking us to say that if someone has one of those enumerated conditions, they're per se disabled, right? No, I'm not asking that. I mean, a per se disability could be something that you could see a physical manifestation of it, such as one arm, one leg. But even with a person with one leg, with modern science, they're able to perhaps run faster than I can run with two legs. But what we're asking the court to do is to allow the jury to hear the facts of the case. The fact is that- How could a jury conclude it was because of a disability? The decision maker knew about the disability previously. That's your allegation. They knew about the disability from the beginning, right? Yes, they did. All right. So that didn't bother them when they hired her. The complaints are completely contemporaneous to the decision not to renew her. And I don't want to go through all the complaints with you, but if all the students are dropping her class or half of the students are dropping the class and they're saying things like everyone in the class is scared of her, there's an atmosphere of fear, we don't want to come to class, she's berating and bullying students. What is the school to do? What do you suggest the schools do if there's a complaint? I know she disputes, maybe the students are misunderstanding her, but the fact of the matter is they're getting complaints. Well, what the school should have done is should have given her the opportunity to address these issues. They did not. This was a secret meeting where they decided to terminate her. Did she pursue any state remedies after her termination? No, she did not. Doesn't she have a problem then with regard to those claims? Well, the state remedy would not have given her everything that she wanted. We have cases where it says- What? The state remedy that would have been available would have been an Article 78. We have cases where we've said even though an Article 78 provides different relief, it's still an adequate post-deprivation remedy. I mean, you've said that before. It is one of the remedies that's available, but it still does not preclude her from bringing a claim under the Rehabilitation Act. No, no, but the due process- That's true. I was addressing the due process. You said that the court's decision was inconsistent, but the court just said that you satisfied the first two elements and that you did not show that there was not an adequate post-deprivation remedy. There's nothing inconsistent about that. Sometimes you plead some elements plausibly, and the third element you did not, right? Well, this is where the problem came in with the first decision by the first court. They did find that she plausibly alleged a deprivation claim. But later on in the order, the judge flipped and said, well, let's dismiss all the individual defendants. No, that's not- you're reading it incorrectly. We've got time. Yeah, we'll- you have time to rebuttal. All right? Thank you. We'll hear from Ms. Greenwald. Good morning, and may it please the court, Blair Greenwald on behalf of the appellees. Just to briefly address the dismissal order, there is nothing inconsistent about that. As the panel has noted, two of the elements were met, but the third was not, which is classic analysis in order to dismiss a claim. Turning to the discrimination claim against the university, one of the most straightforward ways to affirm that summary judgment ruling is to find that there was no evidence sufficient to raise a material dispute of fact as to but-for causation. This is because the record shows that the non-renewal decision was based on Ms. Gentleman's abusive and vindictive behavior towards the students, which occurred directly before the non-renewal decision. The department chair relied on numerous student complaints- Mr. Weed suggested that it was because of the alleged workplace violence incident, and it wasn't because of the students. Do you want to respond to that? Yes. First, there's no evidence in the record that that is the but-for cause. All of the evidence suggests it was the vindictive and hostile behavior. In addition to that, the temporal proximity of the student complaints versus the shooting incident, which was reported more than six months before and which was dealt with by everyone in a very straightforward manner and ended up with simply a counseling memorandum, there's no indication that that in particular really influenced the non-renewal decision, much less was the but-for cause of the non-renewal decision. Can I ask, if we decide that we were going to accept an invitation to apply Katz-Paw theory here, does that change how this case turns out? No, and we actually think it makes the most sense in this case for the court not to address that question, but just simply assume that even if the Katz-Paw liability theory applies, or I'm sorry, is viable for a Rehabilitation Act claim, that it does not render any different result here. And that's because Dudley didn't rely on the police report, is that right? Both that reason and the fact that the police report was not false. As Gentleman has repeatedly admitted every time, she did, in fact, make these shooting comments. In addition, if the court has any questions about the ground that the district court relied on in terms of whether- I have a concern on that issue that even if there is need to be some individualized assessment that bipolar disorder, obviously you would not need much to say that that's a disability under the Rehabilitation Act, right? The regulations show that there likely does not need to be a huge showing in order to prove that. The problem that Ms. Gentleman has here is actually twofold. One is that the only evidence she presented is that she has unspecified bipolar or related disorder, which the DSM-5, which is in evidence here, shows is neither meets the full criteria for bipolar disorder, which is what the regulations reference. The court is proceeding on a regarded-as theory, so the question would be if she was regarded as having bipolar disorder, not unspecified, not open disorder, but bipolar disorder, that that would be enough to satisfy it as well. And I think for us to delve into that at this stage of the proceeding would be potentially problematic, right? The court certainly doesn't- There was certainly some evidence that people knew that she was bipolar, and so even under a regarded-as claim- So under the perception claim, we believe there's not evidence here to support that either, but because the only person that there's any evidence or a material issue of fact as to whether they knew is the department chair who supposedly learned about this in the fall of 2012 and allowed her to finish her entire three-year term without taking any action against her and never made the renewal decision for more than two years after he supposedly learned of it. But in addition, the court need not reach this issue because there is a more straightforward analysis in that the evidence cannot support a finding that her bipolar disorder was the but-for cause of the non-renewal decision. If the court has no further questions, we would ask the court to affirm for these reasons and those stated in our words. Thank you. Mr. Wade, you have three minutes to evolve. Mr. Wade, it would help me if you explained whether or not there was any legal significance to the fact that she had a contract that was not renewed versus someone who might have been regularly on staff and needed to actually be fired. Well, with the university, it's normal throughout the course and it's normal for her type of contract to be renewed on a regular basis. That doesn't arise as some kind of property right, are you saying? I'm asking if there's a legal significance here that we need to address. No, I don't believe that there's anything unusual about her contract with the university. It is something that's typically renewed. As a matter of fact, throughout this case, there was questions about whether or not she should have been given some sort of due process in order to address the deficiencies that the university found in her teaching, but it was never addressed by the university. But the question would be, is it an adverse employment action? I think we have said that a non-renewal of an employment contract can constitute an adverse employment action for purposes of discrimination laws, right? That's correct, Your Honor. She raised something, if they knew about her disability from the beginning, and there was this workplace allegation of shooting, a workplace comment, and if they were motivated by her disability, they hired her, and then when that happened, they gave her a counseling memo. They didn't do a non-renewal at that point. So again, I just go to the but-for cause with respect to the student complaints. Everything was timed to the student complaints, right? No, it was not. You're saying their articulated reason was the workplace violence allegation, but they gave a counseling memo on that, and they continue to let her work, right? That's correct. The workplace violence was that she actually did not initiate that. She was in response to someone else. There was actually more to the case than what has been stated here. For instance, something that I did not cite in my brief, but it's in the record at page A333. This whole thing actually started when she rebuffed a romantic advance on her. She rebuffed this other colleague. Why hasn't that argument been forfeited? The reason why we never made that argument was because it was a statute of limitation problem with it. By the time she came to my office, it was years later. But the fact is, that's what actually started this, and then the individual defendants started passing rumors about her bipolar disorder, and we believe that they influenced her supervisor, Dudley Stinkin. And this thing about a gun, she did not make that allegation. They gathered all the students and had them write the negative evaluations about what she was doing? They're responsible for that, too? No, we're not going to dispute the negative evaluations from the students, because she was a tough professor, and she caught them cheating. It's a typical what happens at a university. A professor catches you cheating, so you write a bad review about the professor. Well, I didn't read them that way, but all right. Thank you. Thank you so much. Appreciate it. All right, we'll reserve the decision. Thank you. To both of you, have a good day.